**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bryna Corbett, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>Michael J. Astrue, )<br>)<br>Defendant. )<br>)<br>_____ ) | No. CV 11-00719-PHX-NVW<br><br>**ORDER** |

    Bryna Corbett seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her claim for supplemental security income under the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.    Background**

    **A.    Factual Background**

    Corbett was born on February 1, 1975. She was 32 years old as of December 11, 2007, the date she applied for supplemental security income. She graduated from high school and completed one year of college. Her past work includes cashier, receptionist, and gas station attendant.

    Corbett has been diagnosed with peripheral neuropathy, diabetes, obesity, hypertension, gastroesophageal reflux disease, and chronic back pain. She also has been

diagnosed with cyclothymic disorder (a mild form of bipolar disorder), post-traumatic stress disorder, and obsessive/compulsive disorder.

In 2008, Corbett reported that she prepared meals, cared for her four children, took them to school, picked them up from school, vacuumed, washed clothes, cared for family pets, drove, shopped in stores and by computer, read every day for about 20 minutes, watched movies twice a month, and attended church weekly. She said that her eleven-year-old child helped get the two-year-old out of her van, and her children helped her put on pants or shorts because of her back pain. She also said she could pay bills, handle a savings account, use a checkbook, and count change. She reported that she was taking online educational courses. In August 2008, Corbett was five feet six inches tall and weighed 354 pounds.

In January 2010, Corbett testified that she was taking online college courses, had a driver's license, and was able to drive, go to stores, and make latch hook rugs. She lived with her husband and four children, ages seventeen, twelve, eight, and four years old. She testified that her physical pain is basically in her back and, if she stands too long, her left leg. She reported taking medication for her cyclothymic disorder, but still having difficulty concentrating, mood swings, sleep problems, and anxiety. She testified that she was five feet six inches tall and weighed 350 pounds.

**B.  Procedural History**

On December 11, 2007, Corbett applied for disability insurance benefits, alleging disability beginning January 1, 2004. The application was denied on initial review and again on reconsideration, after which Corbett requested that her claim be heard by an ALJ. On January 20, 2010, an administrative hearing was held at which Corbett testified and was represented by counsel. Tracy Young, an impartial vocational expert, also appeared and testified at the administrative hearing. On March 17, 2010, the ALJ issued his decision that Corbett had not been under a disability as defined in the Social Security Act since December 11, 2007, the application date.

1   On February 14, 2011, the Appeals Council denied Corbett's request for review of
the ALJ's unfavorable decision, making that decision the final decision of the
Commissioner. On April 12, 2011, Corbett sought judicial review of the decision
pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**II.     Standard of Review**

The district court reviews only those issues raised by the party challenging the
ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court
may set aside the Commissioner's disability determination only if the determination is not
supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625,
630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a
preponderance, and relevant evidence that a reasonable person might accept as adequate
to support a conclusion considering the record as a whole. *Id.* In determining whether
substantial evidence supports a decision, the court must consider the record as a whole
and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.*
As a general rule, "[w]here the evidence is susceptible to more than one rational
interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be
upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

If the ALJ's decision is not supported by substantial evidence or suffers from legal
error, the court has discretion to reverse and remand either for an award of benefits or for
further administrative proceedings. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.
1996); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). "Remand for further
proceedings is appropriate if enhancement of the record would be useful." *Benecke v.
Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). "Conversely, where the record has been
developed fully and further administrative proceedings would serve no useful purpose,
the district court should remand for an immediate award of benefits." *Id.* (citing *Smolen*,
80 F.3d at 1292).

The ALJ is responsible for resolving conflicts in medical testimony, determining
credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.

1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

### III. Five-Step Sequential Evaluation Process

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a). If the ALJ determines that the claimant is disabled or not disabled at any step, the ALJ does not continue to the next step. The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(I). If so, the claimant is not disabled and the inquiry ends. *Id.* At the step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 416.920(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meet or equal an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 416.920(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 416.920(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 416.920(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### IV. Analysis

At step one, the ALJ found that Corbett had not engaged in substantial gainful activity since December 11, 2007, the application date. At step two, the ALJ found that

Corbett had the following severe impairments: obesity, obsessive/compulsive disorder, cyclothymic disorder, borderline intellectual functioning, post-traumatic stress disorder, and peripheral neuropathy. At step three, the ALJ found that Corbett did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the claimant is limited to standing or walking for only 4 hours out of an 8 hour workday. The claimant is limited to sitting for up to 6 hours out of an 8 hour workday. The claimant must be able to shift positions from sitting to standing at will. The claimant should avoid climbing ladders, ropes and scaffolds. The claimant may on occasion climb, balance, stoop, crouch and crawl. The claimant should avoid working at unprotected heights and around hazardous moving machinery. The claimant should avoid working around an excessive amount of dust, fumes or gasses. The claimant has pain in her back, legs and abdomen and occasional numbness and swelling in her legs which is of a slight nature and would have a slight effect on her ability to do basic work activities or this pain is or can be controlled through the use of prescription medications without significant adverse side effects. The claimant may have only occasional contact with the public. The claimant's mental impairments, including her mood swings, obsessive compulsive disorder and decrease in concentration are of a moderate nature and would normally have a moderate effect on her ability to do basic work activities or her mental impairments [are] or can be controlled through the use of appropriate medications without significant adverse side effects.

"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

Corbett does not raise any issues related to the ALJ's determinations at the first three steps of the five-step sequential evaluation process. At step four, the ALJ found that Corbett is unable to perform any past relevant work. At step five, the ALJ found that given her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Corbett can perform, such as hand packager and production worker.

**A.     Weighing Medical Source Evidence**

      **1.     Legal Standard**

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* A treating physician's opinion is afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. Moreover, the Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33.

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided;

the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631.

Moreover, Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given *controlling* weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, the source's specialization, and other factors. *Id.*

Finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion should be rejected:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Orn*, 495 F.3d at 631-32 (quoting Social Security Ruling 96-2p). Where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record. *Id.* at 632.

### 2. The ALJ Did Not Err in Weighing Medical Source Opinion Evidence.

Dr. Doss

Corbett contends the ALJ misinterpreted the evidence supplied by consulting psychologist Minette Doss, Ed.D., P.C., and the restrictions indicated within the doctor's report. She argues that a Global Assessment of Functioning score of 50 denotes severe

symptoms and that "when offered the restrictions as indicated by Dr. Doss's report (TR 431), the vocational expert stated that work would not be sustained (TR 64)."

The ALJ gave "great weight" to the opinion of Dr. Doss, "who opined that the claimant exhibited a strong memory, was able to interact with people, pay bills, do housekeeping and play with her toddler." The ALJ said that he gave Dr. Doss's opinion "great weight" because she was able to personally examine and test Corbett, and her opinion was well supported by test results and Corbett's self-reported activities of daily living. He did not assign Dr. Doss's opinion "controlling weight."

Dr. Doss diagnosed Corbett with obsessive/compulsive disorder, cyclothymia, alcohol dependence, nicotine dependence, and borderline intellectual functioning although the test results were somewhat compromised by Corbett's need for and lack of reading glasses. She determined Corbett's Global Assessment of Functioning score to be 50 and states it as "50 – moderate symptoms." The record does not show that Dr. Doss found Corbett to have severe symptoms.

State agency psychologist Adrianne Gallucci, Psy.D., subsequently reviewed Dr. Doss's report and records from Mohave Mental Health Clinic. Based on her review, she opined that Corbett is able to:

    1.    Remember work-like procedures and understand and remember instructions.

    2.    Carry out very short and simple instructions, maintain attention for 2-hour segments, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted by them, make simple work-related decisions, and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.

    3.    Ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes.

    4.    Respond appropriately to changes in a routine work setting, and be aware of normal hazards and take appropriate precautions.

Although the ALJ did not mention Dr. Gallucci by name, he stated, "The results of the examination [by Dr. Doss] suggest that the claimant is able to remember work-like procedures and understand and remember instructions, carry out short and simple instructions, maintain attention for 2 hour segments, sustain an ordinary routine, work with others, complete a normal workday or workweek, ask simple questions, accept instructions and respond appropriately, and respond to changes in a work setting." This summary demonstrates that the ALJ did not misinterpret Dr. Doss's report as reviewed by Dr. Galluci.

At the administrative hearing, Corbett's attorney questioned the vocational expert whether a person would be able to perform jobs such as hand packager and production worker if she had the following limitations one-third of the workday: decreased concentration, decreased IQ, cannot regularly do grooming and hygiene, cannot effectively modulate her emotions, cannot learn quickly or efficiently, and cannot deal with things that are not perfect. The vocational expert said a person with those limitations would not be able to perform jobs such as hand packager and production worker. Although Corbett's attorney referred to these limitations as things that Dr. Doss found Corbett could not do, Dr. Doss did not opine that Corbett had decreased concentration. Further, Dr. Doss expressly found that Corbett could "remember well," and Dr. Gallucci interpreted Dr. Doss's test results and report as suggesting Corbett could maintain attention for 2-hour segments.

Thus, the hearing decision does not indicate that the ALJ misinterpreted the evidence supplied by Dr. Doss.

<u>Dr. Mane</u>

Corbett contends the ALJ erred by rejecting the opinion of her primary care physician, Sheila Mane, M.D. The hearing decision states:

> The undersigned gives no weight to the opinion of Sheila Mane, M.D., one of the claimant's treating physicians, who opined in a December 7, 2009 medical assessment of ability to do work related activities that the claimant was unable to sit for longer than 1 hour, stand or walk for more than 5-10 minutes, or lift and carry even up to 5 pounds (Ex. 18F). Doctor Mane

- 9 -

> opined that the claimant was unable to drive an automobile (Id. at 2). Doctor Mane's opinions are simply not supported by the objective medical evidence of record, especially the minimal findings revealed by radiographic examination of the claimant's spine. Furthermore, the claimant has testified that, in performing her activities of daily living, she is able to drive, cook, care for and play with her children, perform some housework and work and play on her computer. The excessive limitations contained in Doctor Mane's assessment are in excess of the activities that the claimant performs on a daily basis, and, thus, lack credibility or basis in objective medical findings. As such, the undersigned gives her opinion no weight.

Corbett cites to an electrodiagnostic study that revealed evidence of peripheral neuropathy of bilateral lower extremities and reasons that Dr. Mane was able to determine from the electrodiagnostic study and her clinical observations "a clearer picture" than the radiographic examination of the spine produced. But even if Dr. Mane relied on evidence of peripheral neuropathy of the lower extremities, there is no explanation for her opinion that Corbett could never lift any weight, even less than five pounds, but could reach continuously and use either hand for continuous actions such as grasping, pushing/pulling of controls, and fine manipulation. Further, Dr. Mane's opinion that the total time during an entire eight-hour work day Corbett could sit is one hour and stand or walk is zero hours (meaning she must recline the remaining seven hours) is inconsistent with Corbett's report that she takes online courses, plays games on the computer, drives, vacuums, and shops.

Because the ALJ gave clear, convincing, specific, and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Mane's opinion of Corbett's physical limitations, including both objective medical evidence and her reported daily living activities, he did not err by giving Dr. Mane's opinion no weight.

Dr. Lee

Corbett contends the ALJ erred by giving great weight to the opinion of Sung Won Lee, M.D.:

> As for the opinion evidence, the undersigned gives great weight to the opinion of Doctor Lee, the physician who performed a consultative examination of the claimant and who opined that the claimant was capable of performing work-related activities. Doctor Lee had the opportunity to review the claimant's medical history, including some radiographic

findings, and also had the opportunity to personally examine the claimant. Doctor Lee's opinion is supported by the relatively mild objective medical evidence of record, as well as the claimant's activities of daily living, which include caring for 4 children and attending online classes.

Corbett criticizes Dr. Lee's opinion because he did not have any treating source chart notes to review and did not make a diagnosis of neuropathy. However, Dr. Lee identified "left leg neuropathy" as one of Corbett's chief complaints and stated that she had reported that she had been told that the numbness in her left leg may be related to diabetic neuropathy. Under the heading "Diagnoses," Dr. Lee stated:

> Self-reported history of peripheral neuropathy, with some evidence from a nerve conduction study that apparently suggests peripheral neuropathy in the bilateral lower extremities. There is no evidence of loss of sensitivity to light touch or pinprick in the lower extremities, however. Somewhat doubt that the claimant's numbness is related to diabetic neuropathy, given that she has been carrying a diagnosis of diabetes for only two years.

Dr. Lee also found that Corbett had minimal tenderness in the lower lumbar area and that straight leg raising elicited pain at 5 degrees in both legs. But he observed that Corbett was able to sit comfortably during the examination and was able to take off her shoes. Moreover, she reported to Dr. Lee that she is able to cook and clean and use a computer for leisure and education.

Thus, the ALJ did not err by giving great weight to Dr. Lee's opinion.

**B.     Subjective Symptom Testimony**

**1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). To support a lack of credibility finding, the ALJ is required to point to specific facts in the record that demonstrate that Corbett's symptoms are less severe than she claims. *Id.* at 592.

To be found credible regarding subjective pain or fatigue, a claimant is not required to: (1) produce objective medical evidence of the pain or fatigue itself, or the severity thereof; (2) produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom; or (3) show that her impairment could reasonably be expected to cause the severity of the alleged symptom, only that it could reasonably have caused some degree of the symptom. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

### 2. The ALJ Did Not Err by Finding Corbett's Subjective Symptom Testimony Not Credible.

Corbett contends that the ALJ erred by finding her less than credible. However, the ALJ provided specific, clear, and convincing reasons for rejecting Corbett's testimony about the severity of her symptoms and pointed to facts in the record that demonstrate Corbett's symptoms are less severe than she claims. The hearing decision states:

> The undersigned finds the claimant less than credible with respect to the extent to which her impairments prevent her from engaging in work related activities. First, the undersigned notes that the claimant remains able to care for 4 children, including a toddler, despite her impairments. The claimant remains able to cook, clean and drive, and until recently was able to attend church. The claimant recently began taking online classes at a local community college. The objective findings in the record simply do not support the degree of limitation that the claimant alleges. The claimant remains highly functional.

IT IS THEREFORE ORDERED affirming the final decision of the Commissioner of Social Security denying Bryna Corbett supplemental security income under the Social Security Act.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant against Plaintiff and that Plaintiff take nothing. The Clerk shall terminate this action.

DATED this 3rd day of January, 2012.

_____
Neil V. Wake
United States District Judge